**UNITED STATES, Appellee,**

v.

**Private First Class Ronald M. GARCIA, SSN 559–96–6149, United States Army, Appellant.**

**CM 435184.**

U. S. Army Court of Military Review.

29 July 1977.

---

928

Colonel Alton H. Harvey, JAGC, Lieutenant Colonel John R. Thornock, JAGC, Captain Larry Anderson, JAGC, and Captain Demmon F. Canner, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Captain Richard A. Gallivan, JAGC, and Captain Laurence M. Huffman, JAGC, were on the pleadings for appellee.

Before JONES, FULTON and FELDER, JJ.

## OPINION OF THE COURT

FULTON, Judge:

The validity of the appellant's conviction for wrongfully possessing approximately two pounds of marihuana turns upon the constitutional correctness of a search of his automobile.

At 1400 hours, 14 April 1976, in the criminal investigation detachment office at Fort Bragg, North Carolina, Special Agent Frederick Gleffe introduced an informant to Special Agent Stephen Butts. The informant told Butts that he had seen the appellant that day in his unit mess hall taking orders for marihuana and that, at about 1700 hours, the appellant would be driving his 1973 blue-and-white Volkswagen bus bearing North Carolina license JCY–164, in the on-post Anzio Acres housing area for the purpose of delivering marihuana. The informant indicated that the vehicle would contain seven or more pounds of marihuana.

Gleffe stated that the informant had worked with him before and always had proved reliable. Butts checked with the military police, who confirmed that the appellant was the registered owner of the described vehicle. A stakeout of the Anzio Acres housing area ensued.

At about 1700 hours, the appellant appeared, driving his vehicle along the main thoroughfare into the housing area. The agents stopped him, told him that he was suspected of possessing marihuana, and walked a marihuana dog around the vehicle. The actions of the dog indicated to its han-

dler that there was marihuana in the vehicle. The appellant declined to consent to a search of the vehicle.

Leaving other agents to guard the vehicle, Butts handcuffed the appellant and took him to the office. There, he telephoned the resident military judge, Lieutenant Colonel Yelton, and "explained the situation and circumstances to him." As a result of that conversation, Butts typed out a warrant and supporting affidavit and took them to Judge Yelton's quarters. The material portion of the affidavit read as follows:

[O]n 14 April 76, I received information through a confidential informant, who has proven his reliability in the past, that PFC Ronald M. GARCIA would be transporting pounds of marihuana on the Fort Bragg Military Reservation. He further stated that GARCIA would be driving a 1973 Blue and White VW Bus bearing NC 76, license plates JCY–164, and that the vehicle would be in the vicinity of South Dougherty St., Ft. Bragg, NC. This vehicle discribed by the informant was stopped at about 1700 hours this date on South Dougherty St., driven by GARCIA. Based that there may be marihuana in the vehicle SGT STINES and his Marihuana Dog were taken to the area, where the vehicle was stopped and then walked around the vehicle. The dog alerted on the vehicle and SGT STINES felt that based on the dogs reaction there was marihuana in the vehicle. The informant has in the past worked with CW2 Dan Malkinski, Chief Narcotis Div and Mr. Malkinski informs this affiant that his information is reliable.

The final sentence was added by the military judge before Agent Butts swore to the affidavit. Judge Yelton then issued a warrant for the search of the described vehicle then located adjacent to 308 South Dougherty Drive. The warrant was executed at about 1930 hours (two and one-half hours after the vehicle was stopped). Approximately two pounds of marihuana were found in a compartment beneath the rear seat.

Tried before an eight-member general court-martial, the appellant moved to suppress evidence of the marihuana on the grounds that he had been apprehended without probable cause, the use of the dog was a search without probable cause, and the search warrant was not supported by probable cause. The trial judge denied the motion. The appellant was convicted of wrongfully possessing marihuana and was sentenced to a bad-conduct discharge and confinement at hard labor for six months. The convening authority approved the sentence. Our review is pursuant to Article 66 of the Uniform Code of Military Justice, 10 U.S.C. § 866.[1]

■ The affidavit contains at least a minimal recital fairly indicating that the informant was reliable because he had furnished correct information in the past.[2] There is, however, no mention that the informant had observed the appellant in the mess hall taking orders for marihuana. Accordingly, it fails to disclose any underlying circumstances in support of the informant's belief that the appellant was engaged in criminal activity.

1. This review has been delayed awaiting resolution of an issue as to the maximum punishment resulting from the holding in *United States v. Courtney*, 1 M.J. 438 (1976). As that decision has been held inapplicable to cases tried before its publication, the issue is no longer viable. *United States v. Jackson*, 3 M.J. 101 (C.M.A. 1977).

2. *See United States v. Sultan*, 463 F.2d 1066, 1068–69 (2d Cir. 1972); *compare United States v. Scarborough*, 23 U.S.C.M.A. 51, 48 C.M.R. 522 (1974), *with United States v. Llano*, 23 U.S.C.M.A. 129, 48 C.M.R. 690 (1974). In view of the result we reach in this case, we need not

decide the impact of Agent Butts' inadvertently (as he testified) having named Agent Malkinski rather than Agent Gleffe as the one with whom the informant previously had worked. Neither need we attempt to assess the corroborative effect of the vehicle's appearing where the informant said it would be or the averment by a canine cannabis connoisseur of unspecified reliability that there was marihuana inside. *See United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *cf. United States v. Roberts*, 25 U.S.C.M.A. 39, 44 n. 12, 54 C.M.R. 39, 44 n. 12, 2 M.J. 31, 34 n. 12 (1976).

As ·has often been stated, two things must be shown in order for information given by an informant to furnish a sufficient foundation for . . . exercise of authority to search. First, there must be circumstances laid out on the record tending to prove the reliability of the informant. Secondly, there must be circumstances demonstrating that the items sought to be seized were . . . at the place to be searched.

*United States v. Llano*, 23 U.S.C.M.A. 129, 130, 48 C.M.R. 690, 691 (1974). The second of the requirements has not been met in this case.[3]

▮ The warrant, which now is seen to be deficient, was not the only possible basis for the search. On the facts in this case, we believe that, under *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the agents were entitled to search the appellant's vehicle without a warrant. The information given them by their informant afforded probable cause to believe that the vehicle contained marihuana and to search it therefor. *Id.* at 47–51, 90 S.Ct. 1975. In the course of its opinion, the Supreme Court said:

. . . In *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. . . . [T]he Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize . . .

.    .    .    .    .

Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. . . .

. . . *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.

*Id.* at 48, 50–51, 90 S.Ct. at 1979. In *Chambers*, the search was immediate only in the sense that the officers did not take time to present the probable cause issue to a magistrate. All of the occupants of the car were arrested and the car itself was removed to the police station before it was searched—a course of action the Court found reasonable because of darkness and the nature of the place where the car was stopped. The Court said:

On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The proba-

---

**3.** We can take cognizance only of information known to the military judge. *United States v. Clifford*, 19 U.S.C.M.A. 391, 393, 41 C.M.R. 391, 393 (1970). In his two conversations with Agent Butts, Judge Yelton may have obtained additional information not set forth in the affidavit. Had the authorization to search been issued by a commanding officer, a limited rehearing might be used to determine all of the information that was before him. *See United States v. Davenport*, 14 U.S.C.M.A. 152, 157–58, 33 C.M.R. 364, 369–70 (1963). *But cf. Whitely v. Warden*, 401 U.S. 560, 569, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Judge Yelton's

authority to issue a warrant stems from Army Regulation 27–10, paragraph 14–4, 26 November 1968, as changed, which is substantially identical to Federal Rule of Criminal Procedure 41(c) as amended effective 1 October 1972. That rule is interpreted as prohibiting consideration of any information other than that set forth in or attached to the affidavit. *United States v. Sellers*, 520 F.2d 1281, 1282 n.1 (4th Cir. 1975), *vacated and remanded on other grounds*, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 728 (1976); *see United States v. Hill*, 500 F.2d 315, 322 n.3 (5th Cir. 1974). Therefore, we proceed to another ground of decision.

ble-cause factor still obtained at the station house and so did the mobility of the car . . . .

*Id.* at 52, 90 S.Ct. at 1981.

In the instant case, the probable cause to search the vehicle was no more dissipated by the passage of time than by the removal, in *Chambers*, of that vehicle to the station house. Moreover, the appellant's vehicle remained a target as fleeting as Mr. Chambers' automobile—equally vulnerable to being reclaimed by a family member, friend, or the suspect upon release.[4]

■ Does the fact that the agents obtained and relied on a warrant vitiate an otherwise valid warrantless search? We think not. The question has been answered by the Court of Appeals for the Seventh Circuit in language appropriate here:

> The only other difference between this case and *Chambers* is that here the officers obtained and relied on a warrant which may be invalid, whereas in *Chambers* the warrant process was never invoked. At least on these facts, the officers should not be penalized for going before a magistrate. It would be a different case if the magistrate had denied a warrant, and the officers had thereafter searched in purported reliance on some exception to the warrant requirement. But here the officers did not act in bad faith. We agree with [the trial judge] that they are to be commended for seeking a warrant; they should not be required to run the risk that a poorly drafted affidavit will invalidate an otherwise permissible warrantless search.

*United States v. Darrow*, 499 F.2d 64, 69 (7th Cir. 1974), *cert. denied*, 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974).[5]

■ Neither do the appellant's remaining contentions warrant reversal of his conviction. It was not improper for the convening authority to deny his request for trial before a court consisting entirely of enlisted members. His request was couched in all or nothing terms ("If the convening authority, as is within his discretion, declines to approve this request, then defendant requests trial by a court with officers only and exclusively serving on it.") Therefore, the court, consisting only of officers, was not deprived of jurisdiction because it lacked one-third enlisted membership. Similarly, the objection to the trial counsel's argument on the sentence is without merit. He said, "Gentlemen, it is the government's position that . . . this is not the kind of an offense that you want to give a man a second chance for within the Army. The Army needs to be rid of accused like PFC Garcia." The trial defense counsel objected to that as an expression of personal opinion; appellate defense counsel assert that it is an improper invocation of the views of the convening authority. It is neither.

The findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge FELDER, concur.

---

4. Before trial, the appellant unsuccessfully petitioned the convening authority and the Court of Military Appeals for the release of his automobile. *See Garcia v. Emerson*, U.S.C.M.A. (Daily J., Misc. Docket and Misc. Orders, 1976). It remained for the military judge to order release of the automobile provided it had not been seized by the Drug Enforcement Administration.

5. We are aware that, in *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), the Supreme Court declined to permit the Government to justify an arrest apart from the warrant when, in both courts below, the Government had relied solely on the validity of the warrant. To do so, the Court said, would unfairly deprive the defendant of an opportunity to respond because he had had no reason to cross-examine the affiant and arresting officer or to introduce rebuttal evidence at the trial. This case is different. The appellant contested the validity of the search on every available ground and cross-examined the affiant, Agent Butts, at length.